Tagged Opinion



ORDERED in the Southern District of Florida on April 7, 2016.

**Laurel M. Isicoff, Judge
United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                                 Case No. 13-36867-BKC-LMI

DAISY MENENDEZ                                         Chapter 13

        Debtor.
_____/

**ORDER SUSTAINING IN PART AND OVERRULING IN PART THE TRUSTEE'S (1)
OBJECTION TO EXEMPTIONS AND (2) MOTION TO COMPEL TURNOVER OF ASSETS
OVER EXEMPTIONS**

This matter came before me on an evidentiary hearing on February 9, 2016 on the *Trustee's (1) Objection to Exemptions and (2) Motion to Compel Turnover of Assets Over Exemptions* (the "Objection to Exemptions") (ECF #105). This dispute concerns whether the Debtor converted $65,000 from a non-exempt account[1] into two exempt annuities with the intent to hinder, delay or defraud creditors. Because the Trustee met his burden of proof that the exemption should be disallowed and the Debtor only partially rebutted the Trustee's proof, I hold

---

[1] Because the Debtor, in her Closing Argument (ECF #136), called the Total Control Account (hereafter defined) non-exempt, I find that the Debtor abandoned the argument that the account may have been exempted by Fla. Stat. §222.14.

that the Trustee's Objection is sustained with respect to the November 6, 2013 transfer and overruled with respect to the May 3, 2012 transfer.

## FACTS

The Debtor filed a voluntary petition on November 7, 2013 (the "Petition Date") (ECF #1). Prior to the Petition Date, the Debtor had a MetLife Total Control Account #3883 ("Account #3883"), which was similar to a regular checking account, and not exempt from the claims of creditors. (*See* ECF #129, ¶12). On or about May 3, 2012, the Debtor transferred $30,000 from Account #3883, a non-exempt account, to MetLife Annuity Account #8620, an exempt account. (*See* ECF #129, ¶13) (the "May 3, 2012 transfer"). On November 6, 2013, one day prior to the Petition Date, the Debtor transferred $35,000 from Account #3883, a non-exempt account, to open Jackson Annuity Account #2055, an exempt account. (*See* ECF #29, ¶14) (the "November 6, 2013 transfer"). This second transfer resulted in the closing of Account #3883. (*See* ECF #129, ¶14).

On November 22, 2013, the Debtor filed her schedules and statement of financial affairs (the "Schedules") (ECF #9). The Debtor listed three accounts on her Schedule B, which were claimed as exempt on Schedule C as follows:

| Account | Amount | Debtor's Claim of Exemption |
|---|---|---|
| MetLife Guaranteed Fixed Annuity | $30,000 | Florida Statutes §222.14 |
| 401K Jackson National Life, Individual Retirement Account | $74,554 | Florida Statutes §222.21(1) |
| YMCA Retirement Fund | $74,000 | Florida Statutes §222.21(1) |

*See* ECF #9, pp. 4 and 7.

    a. *Failure to Disclose Existence of Account and Transfers*

Pursuant to information provided by the Debtor, the Debtor had the following accounts as of January 27, 2014:

| Description of Account | Account No. (last 4 digits) | Balance |
|---|---|---|
| MetLife Annuity | #8620 | $85,107.96 (as of 1/27/14) |
| Jackson Annuity | #91642 | $84,633.28 (as of 1/27/14) |
| Jackson Annuity | #2055 | $36,026.50 (as of 1/27/14) |
| Thrift Savings Plan | #37388 | $155,569.36 (as of 10/1/13) |

*See* Joint Pretrial Stipulation (ECF #129), ¶10. The Jackson Annuity Account #91642, Jackson Annuity Account #2055 and Thrift Savings Plan Account #37388 were neither listed nor claimed as exempt in the Debtor's schedules. (*See* ECF #129, ¶11).

### b. *Debtor Had Been Sued Prior to Bankruptcy*

Prior to the Petition Date, the Debtor was a defendant in at least seven lawsuits that were commenced between 2008 through 2011. (*See* ECF #9, p. 21). The Debtor was aware of the existence of the outstanding debt subject of the lawsuits. *See* Joint Pretrial Stipulation (ECF #129, ¶8).[2] The Schedules reflect undisputed debt in the amount of $723,049.60.

### c. *Debtor was Insolvent*

At the time of the referenced transfers, the Debtor was aware of the existence of claims of creditors. (*See* ECF #129, ¶15). At the time of the November 6, 2013 transfer, the Debtor was contemplating filing for bankruptcy; indeed, she filed the next day. (*See* ECF #129, ¶16). The Debtor testified that at the time of the foreclosures of her investment properties, the values were less than the debt associated with the properties. Further, the Debtor's 2012 tax return (Trustee Exh. 16), together with the Debtor's Schedules (ECF #9), show that the Debtor's income was derived from social security and pensions, and was not sufficient to pay the undisputed debts that had accumulated.

---

[2] All subsequent references to the Joint Pretrial Stipulation shall refer solely to ECF #129.

### d.      *Account #3883 Was the Debtor's Only Non-Exempt Asset*

At the time of the two asset transfers, the funds in Account #3883 represented substantially all of the Debtor's unencumbered and non-exempt assets. MetLife Account #8620 was in existence prior to the $30,000 transfer on May 3, 2012, but had no activity for years prior to that transfer. (*See* Trustee Exh. 8, 9 and 12). Trustee's Exh. 12 reflects that during that period of time purchases totaling $70,000 were made by the Debtor but no withdrawals were made from MetLife Account #8620.

The Debtor's Schedules reflect that as of the Petition Date she had no unencumbered assets of significant value, other than the MetLife Annuity, Jackson 401k/IRA and YMCA Retirement Fund she claimed as exempt. (*See* ECF #9, pp. 3-7). If the Debtor had not transferred the $65,000 funds in Account #3883 into the MetLife #8620 Annuity and the Jackson Annuity #2055 Account #3883 would have been subject to administration by the Trustee for the benefit of creditors.

### e.      *The Debtor Retained Control of the Converted Funds*

The Debtor retained control of the proceeds of Account #3883 at all times. (*See* ECF #129, ¶17). MetLife Annuity Account #8620 and Jackson Annuity Account #2055 are currently titled in the Debtor's name, and were titled in the Debtor's name as of the Petition Date. (*See* ECF #129, ¶18).

## ANALYSIS

### I.      Fraudulent Asset Conversion

The Trustee objected to the Debtor's claim of exemptions pursuant to Fla. Stat. §222.30(2). That section provides that:

> Any conversion by a debtor of an asset that results in the proceeds of the asset becoming exempt by law from the claims of a creditor of the debtor is a fraudulent asset conversion … if the debtor made

>    the conversion with the intent to hinder, delay or defraud the creditor.

Fla. Stat. §222.30(2). "The party objecting to the exemption must prove by a preponderance of the evidence[3] that the debtor harbored the requisite intent …, which may be inferred from extrinsic evidence." *In re Simms*, 243 B.R. 156, 159 (Bankr. S.D. Fla. 2000) (internal citations omitted). Once the party objecting has met its burden of proof, the burden shifts to the party claiming the objection to show that the exemption is proper. *In re Wilbur*, 206 B.R. 1002, 1006 (Bankr. M.D. Fla. 1997) (citing *In re Rightmyer*, 156 B.R. 690, 692 (Bankr. M.D. Fla. 1993)); *Beal Bank SSB v. Almand & Assocs.,* 780 So.2d 45, 59 n. 19 (Fla. 2001) (noting burden of proof in civil fraud action is preponderance of the evidence even if burden shifts to another party).

## II.    Courts Analyze Badges of Fraud to Determine Debtor's Intent

"Because the determination of actual fraudulent intent can be difficult, courts look to certain 'badges of fraud' to determine whether the transfer was made with the intent to defraud creditors." *General Electric Co. v. Chuly International,* LLC, 118 So.3d 325, 327 (Fla. 3d DCA 2013) (citing *Beal Bank SSB* 780 So.2d at 60). A list of certain "badges of fraud" is contained in Fla. Stat §726.105.  Fla. Stat. §222.30 adopts the definition section from Fla. Stat. §726 "unless the application of a definition would be unreasonable." Fla. Stat. §222.30(1). The Eleventh Circuit has stated that "[t]his explicit cross-referencing of the two statutory provisions further suggests not only that they are to be read in tandem but, more importantly, that § 222.30 is a subset of the causes of action outlined in § 726." *Levine v. Weissing* (*In re Levine*), 134 F.3d 1046, 1053 (11th Cir. 1998).

---

[3] The preponderance of the evidence is a low burden that "requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012) (internal citations omitted).

Section 726.105 of the Florida Statutes provides that in determining actual intent to defraud creditors, consideration may be given, among other factors, to whether:

(a) The transfer or obligation was to an insider.
(b) The debtor retained possession or control of the property transferred after the transfer.
(c) The transfer or obligation was disclosed or concealed.
(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(e) The transfer was of substantially all the debtor's assets.
(f) The debtor absconded.
(g) The debtor removed or concealed assets.
(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Fla. Stat. §726.105(2). There are numerous cases where courts conclude, after analyzing the badges of fraud, that a debtor made a transfer with the requisite intent. *See In re Levine*, 134 F.3d at 1046 (debtors purchased exempt annuities); *Jennings v. Maxfield*, 2006 WL 6829886 (M.D. Fla. 2006) (debtor purchased exempt annuity after being sued); *In re Kelley*, 2007 WL 2492732 (M.D. Fla. 2007) (within two months of filing her bankruptcy, a debtor transferred non-exempt funds into an exempt asset, i.e., the cash surrender value of a whole life insurance policy); *Banner Construction Corp. v. Arnold*, 128 So.2d 893, 896 (Fla. 1st DCA 1961) (can infer fraudulent intent from existence of several badges of fraud); *Mejia v. Ruiz*, 985 So.2d 1109, 1113 (Fla. 3d DCA 2008) (existence of badges of fraud create a prima facie case and raise a rebuttable presumption that the transaction is void and courts may take into account the circumstances surrounding the conveyance).

### III. Multiple Badges of Fraud Are Present In This Case

"(W)hile a single badge of fraud standing alone may amount to little more than a suspicious circumstance, insufficient in itself to constitute fraud per se, several of them when considered together may afford a basis from which its existence is properly inferable." *United States v. Fernon*, 640 F.2d 609, 613 (5th Cir. 1981) (quoting *Banner Construction Corp.*, 128 So.2d at 896).

The Trustee presented undisputed evidence of numerous "badges of fraud" and therefore satisfied his initial burden of proof that the exemption should not be allowed. Among other things, it is undisputed that: (1) the Debtor retained possession and control of the transferred funds; (2) the transfers were not disclosed; (3) the Debtor did not disclose the existence of one of the annuities; (4) before the transfers were made, the Debtor had been sued and was a party to multiple lawsuits; (5) the transfers were substantially all of the Debtor's non-exempt, unencumbered assets; (6) the Debtor was insolvent at the time of the transfers; (7) the second transfer of $35,000 was made *one day* before the Debtor's bankruptcy petition was filed.

### IV. Debtor's Testimony Rebuts Evidence of Circumstantial Intent Regarding the May 2012 Transfer, But Does Not Rebut Evidence of Circumstantial Intent Regarding the November 2013 Transfer

Since the Trustee met his burden, the burden shifted to the Debtor to rebut the presumption of voidability of the transfers. *In re Wilbur*, 206 B.R. at 1006 (citing *In re Rightmyer*, 156 B.R. at 692). I will address the two transfers in backwards chronological order.

#### a. The Debtor Did Not Rebut the Trustee's Presumption in Regards to the November 2013 Transfer

The easier transfer to analyze is the November 6, 2013 transfer that took place one day before the bankruptcy was filed. Although the Debtor stated the transfer was pursuant to advice from a financial advisor, this fact alone is not enough to overcome the badges of fraud. *See In re*

*Wreyford*, 505 B.R. 47, 51 (Bankr. D.N.M. 2014) (transfer business from sole-proprietorship to limited liability company on the advice of advisor after large lawsuit constituted fraudulent intent); *In re Preuit*, 2013 WL 2467976, at *11 (Bankr. D. Idaho 2013) (transferring of almost $120,000 to annuity upon advice of advisor was fraudulent because transfer included virtually all of Debtors' non-exempt assets two days before signing a stipulated judgment and approximately six months before filing bankruptcy constituted fraudulent intent). The Debtor waited almost a year and a half between the May 3, 2012 transfer and the November 6, 2013 transfer. Due to the suspect timing and the fact that the Debtor used some of the funds to pay her bankruptcy lawyer while putting the rest of the funds into an exempt account, the Debtor is unable to rebut the Trustee's proof by a preponderance of the evidence that the November 6, 2013 transfer was made with the intent to delay, defraud or hinder creditors.

### b. *The Debtor Did Rebut the Trustee's Presumption in Regards to the May 2012 Transfer*

Conversely, the Debtor was able to rebut the presumption of fraud in regards to the May 3, 2012 transfer. This transfer took place approximately a year and a half before the Debtor filed for bankruptcy. Although at the time of the May 3, 2012 transfer the Debtor was already facing financial woes, the Debtor testified that she was not concerned about deficiency judgments because the lenders told her they were not going to pursue deficiencies. Moreover, unlike the later transfer that liquidated Account #3883, the Debtor transferred less than half of the money in Account #3883 on May 3, 2012. The Debtor testified she made the transfer on the advice of a financial advisor to get a better interest rate.

Since the Debtor transferred less than half of the funds in the May 3, 2012 transfer, based on advice from her financial advisor, and those funds which she did transfer went into one annuity account, the Debtor has proven by a preponderance of the evidence that the May 3, 2012

transfer was not made with the intent to hinder, delay or defraud creditors. If the Debtor truly wanted to delay, defraud, or hinder creditors, she would have transferred all the money in Account #3883 on May 3, 2012 since there were already several judgments against her at that time. Consequently, the Debtor has rebutted the Trustee's showing of a presumption of fraud with regard to the May 3, 2012 transfer.

## CONCLUSION

The Debtor's testimony in regards to the May 3, 2012 transfer indicates that she made the transfer solely for financially planning. However, the Debtor's testimony and actions in regards to the November 6, 2013 transfer, especially the timing, the fact she liquidated the account, and her use of the funds to fund the bankruptcy case indicate the Debtor's intent to hinder, delay, or defraud creditors. Therefore, the Trustee's Objection is SUSTAINED IN PART as to the November 6, 2013 transfer and OVERRULED IN PART as to the May 3, 2012 transfer. The Debtor is ordered to turn over the funds from the November 6, 2013 transfer.

# # #

Copies furnished to:
Grace Robson, Esq.

Attorney Robson shall serve a copy of this Order upon all parties in interest and file a certificate of service with the Clerk of Court.